# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2015 Term**

**FILED**

**February 5, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 13-0522**

**LAWYER DISCIPLINARY BOARD,**
Petitioner

**V.**

**APRIL D. CONNER,**
Respondent

---

**Lawyer Disciplinary Proceeding**
**Nos. 11-03-499; 12-03-513; and 12-03-557**

**LAW LICENSE SUSPENDED AND OTHER SANCTIONS**

---

**Submitted: January 27, 2015**
**Filed: February 5, 2015**

Joanne M. Vella Kirby, Esq.
Lawyer Disciplinary Counsel
Office of Disciplinary Counsel
Charleston, West Virginia
Counsel for the Petitioner

April D. Conner, Esq.
West Union, West Virginia
Respondent, *Pro se*

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.     "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment.  On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record."  Syllabus point 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

2.     "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."  Syllabus point 3, *Committee on Legal Ethics of The West Virginia State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

3.     "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary

Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syllabus point 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

4. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syllabus point 2, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

5. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other

penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syllabus point 3, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

6. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus point 4, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

7. "'""In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).' Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W. Va. 260, 382 S.E.2d 313 (1989)." Syllabus point 7, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

**Davis, Justice:**

The Office of Disciplinary Counsel ("the ODC") instituted this lawyer disciplinary proceeding against the respondent, April D. Conner ("Ms. Conner"). The disposition recommended by the Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board, in which Ms. Conner acquiesced, included a thirty-day suspension of Ms. Conner's law license, in addition to other recommended sanctions. This Court did not agree with the proposed punishment and scheduled the case for oral argument. Thereafter, the ODC moved this Court to enhance the previously-requested sanctions because, in its opinion, additional aggravating factors had been committed since the HPS's recommendations. Based upon this Court's review of the record submitted, the ODC's brief and argument, and the applicable legal precedent, this Court finds clear and convincing evidence to support the factual findings of the HPS. However, we disagree with the HPS's recommended sanctions in regard to the length of the license suspension. Accordingly, we impose a ninety-day suspension of Ms. Conner's law license, and adopt the remaining sanctions as recommended by the HPS.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Conner has been a practicing member of the West Virginia State Bar since her admission in 1996. The behavior subject to this disciplinary proceeding occurred mainly

while Ms. Conner was practicing law in Clarksburg, West Virginia. The underlying complaints are briefly described herein.

### A. Complaint of Nicholas Robey

Ms. Conner was appointed to represent Nicholas Robey in a criminal matter. In May 2010, he was indicted for felony murder, conspiracy to commit burglary, and grand larceny. On August 5, 2010, Mr. Robey pled guilty to the offense of felony murder. As part of the plea agreement, the parties requested that the circuit court recommend mercy, which the circuit court declined to do at the sentencing hearing on August 2, 2011. Mr. Robey was sentenced to life imprisonment. On October 24, 2011, Mr. Robey filed a complaint with the ODC alleging that Ms. Conner failed to appeal his sentence, even though he asserts that he had expressed his desire to appeal. He also contended that Ms. Conner failed to communicate with him and his mother despite their repeated attempts to contact her. Further, Mr. Robey argued that Ms. Conner failed to comply with his requests during pre-sentencing and that she erred by making no contacts with his family to participate in his sentencing hearing.

The ODC sent a letter dated October 28, 2011, and a copy of Mr. Robey's complaint to Ms. Conner and asked her to file a response within twenty days. After receiving no response, the ODC sent a second letter dated December 12, 2011, by certified mail,

directing Ms. Conner to file a response by December 28, 2011. Ms. Conner responded by letter on December 27, 2011, wherein she maintained that she and Mr. Robey had discussed the subject of an appeal, and, at all times, she had advised Mr. Robey that even if he received life without the recommendation of mercy, there would be no appeal. Ms. Conner also stated that she inquired of Mr. Robey whether his mother would attend his sentencing hearing to speak on his behalf and that Mr. Robey said that his mother did not have enough notice to make arrangements to travel from out of state to attend the hearing. Additionally, Ms. Conner explained that Mr. Robey's father attended the sentencing hearing but declined to address the circuit court. Lastly, Ms. Conner denied that she had inadequate communication with Mr. Robey during his case.[1]

### B. Complaint of The ODC

In 2006, Jonathan David Boatwright was found guilty of first degree sexual assault, sexual abuse by a custodian, and incest. He received a sentence of incarceration of thirty to seventy years. Mr. Boatwright's direct appeal to this Court was denied, and, on April 7, 2008, he filed a post-conviction petition for writ of habeas corpus and a motion for appointment of counsel. The Circuit Court of Doddridge County appointed counsel to represent Mr. Boatwright in that matter, and a supplemental petition was filed, which was

---

[1]During her sworn statement on February 25, 2013, Ms. Conner acknowledged that she did not see Mr. Robey in person after he was sentenced, and she could not recall whether she had spoken with him at any point after sentencing.

3

refused on July 15, 2011. Thereafter, on August 11, 2011, Mr. Boatwright, *pro se*, filed a notice of appeal with this Court and a motion for appointment of appellate counsel with the circuit court. On March 19, 2012, Ms. Conner was appointed to represent Mr. Boatwright in the appeal of the circuit court's denial of his petition for a writ of habeas corpus.

This Court entered an amended scheduling order on April 23, 2012, directing Ms. Conner to perfect Mr. Boatwright's appeal by June 16, 2012. Ms. Conner failed to perfect the appeal, and, on July 9, 2012, the Office of the Attorney General filed a motion to dismiss Mr. Boatwright's case. This Court refused the motion to dismiss and ordered Ms. Conner to perfect Mr. Boatwright's appeal within ten days of her receipt of this Court's order or the appeal would be subject to dismissal and other sanctions. Again, Ms. Conner failed to perfect Mr. Boatwright's appeal. On September 6, 2012, this Court, on its own motion, proceeded to consider sanctions for Ms. Conner's failure to perfect Mr. Boatwright's appeal. This Court commanded and directed Ms. Conner to appear on October 17, 2012, to show cause as to why she should not be held in contempt for her failure to perfect the appeal unless sooner mooted by perfection of the appeal. By letter dated September 10, 2012, this Court asked that the ODC consider opening a complaint against Ms. Conner.

Ms. Conner failed to appear before this Court, as ordered, for the show cause hearing scheduled for October 17, 2012. Therefore, on October 18, 2012, this Court entered

4

an order wherein it found Ms. Conner guilty of contempt by failing to perfect Mr. Boatwright's appeal and for failure to appear before this Court as ordered. This Court further stated that Ms. Conner could purge herself of contempt by properly perfecting the appeal within seven calendar days of receipt of this Court's order. Moreover, Ms. Conner was ordered to pay a fine of $250 per day for each day she continued to be in contempt for failure to perfect the appeal. On October 25, 2012, Ms. Conner filed Mr. Boatwright's petition for appeal and tendered a check in the amount of $1,500 for the fine imposed by this Court.

As a result of the request initiated by this Court, the ODC opened the instant complaint against Ms. Conner with her response due by October 11, 2012. One day after the response's due date, Ms. Conner called the ODC and requested an extension of time to respond. Her response deadline was moved to October 22, 2012. Again, Ms. Conner failed to answer. On October 24, 2012, the ODC sent a second letter, by certified mail, directing Ms. Conner to file a response no later than November 5, 2012, and again advising her of the possible sanctions involved for failing to respond. Ms. Conner responded on November 4, 2012, and stated that "while there are several explanations, there is truly no excuse for having [failed] to perfect the appeal on Mr. Boatwright's behalf in the time that passed." She cited the fact that she is a solo practitioner with a busy caseload working in multiple counties; however, she acknowledged that "none of these things should have resulted in the missing of the deadlines in the Boatwright case as I did."

5

### C. *Complaint of Shawna Drum*

Ms. Conner was retained by Shawna S. Drum (now Swiger) to represent her in a family court matter. The family court ruled against Ms. Drum, and Ms. Conner appealed the adverse ruling to the Circuit Court of Harrison County, which affirmed the family court's decision. Subsequently, in January 2012, Ms. Drum retained Ms. Conner to file another matter in the same family court. Ms. Drum paid Ms. Conner a $2,000 retainer fee. According to Ms. Drum's complaint, the only communication she had with Ms. Conner during the second representation was when Ms. Conner emailed questions to Ms. Drum. Ms. Drum responded to the email but never heard from Ms. Conner thereafter. Ultimately, Ms. Drum fired Ms. Conner in April 2012 and requested a refund of the unearned retainer fee, to which Ms. Conner declined to respond. Ms. Drum retained new counsel, who also contacted Ms. Conner and requested a return of the retainer fee.

Ms. Drum filed a complaint with the ODC on October 15, 2012. By letter dated October 24, 2012, the ODC sent a copy of the complaint to Ms. Conner and directed that she submit a response within twenty days. After receiving no response, the ODC sent a second letter by certified mail on November 14, 2012, requesting Ms. Conner to file a response by November 26, 2012. Ms. Conner again failed to respond, and a subpoena was issued for her appearance at the ODC for her sworn statement to be taken on January 22, 2013. On that date, Ms. Conner telephoned the ODC and stated she would be unable to

6

attend because she was detained while working on multi-disciplinary treatment meetings for abuse and neglect proceedings. Ms. Conner failed to provide the ODC with the requested verification of such proceedings.

Ms. Conner's sworn statement occurred on February 25, 2013. At that time, she had yet to return Ms. Drum's money. Significantly, Ms. Conner stated that she had not deposited the retainer into her IOLTA account,[2] but rather, had deposited the same into her "regular business account." Further, converse to Ms. Drum's contentions, Ms. Conner asserted that she and Ms. Drum "probably discussed the case three or four times" during the second representation.

### D. Hearing Panel Subcommittee Proceedings

On November 21, 2013, the HPS heard testimony from Shawna Drum (now Swiger), Nicholas Robey, and Ms. Conner. As a result of the testimony and the exhibits received, the HPS determined that Ms. Conner had violated Rules 1.2(a), 1.3, 1.4, 1.15, 3.2, 8.1, and 8.4 of the West Virginia Rules of Professional Conduct[3] ("Rules" or "Rule").

---

[2]"IOLTA is an acronym for Interest of [sic] Lawyer Trust Accounts." *Lawyer Disciplinary Bd. v. Askin*, 203 W. Va. 320, 324 n.8, 507 S.E.2d 683, 687 n.8 (1998) (per curiam). Lawyers are required to maintain such an account under Rule 1.15 of the West Virginia Rules of Professional Conduct.

[3]In a September 29, 2014, order, this Court approved comprehensive amendments to the West Virginia Rules of Professional Conduct. The amendments became

(continued...)

7

Specifically, in regard to Mr. Robey's complaint, the HPS found that Ms. Conner failed to appeal his sentence, and, thus, she did not abide by Mr. Robey's decisions concerning the objectives of his representation. These failures resulted in the HPS's determination that Ms. Conner violated Rules 1.2(a)[4] and 1.3.[5] Additionally, the HPS found that Ms. Conner failed to communicate with Mr. Robey; therefore, she violated Rules 1.4(a) and 1.4(b).[6]

---

[3](...continued)
effective January 1, 2015; however, this Opinion applies the version of the Rules that was in effect at the time of Ms. Conner's transgressions. We note, however, that the substance of the new Rules would not result in a different disposition in this case.

[4]Rule 1.2(a) of the West Virginia Rules of Professional Conduct provides:

> (a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[5]West Virginia Rule of Professional Conduct 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[6]Rule 1.4, sections (a) and (b) of the West Virginia Rules of Professional Conduct directs as follows:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(continued...)

As previously explained, the ODC initiated a complaint at the behest of this Court in relation to Ms. Conner's representation of Mr. Boatwright. Because the HPS concluded that Ms. Conner had failed to meet numerous deadlines set by this Court in Mr. Boatwright's appeal, it was decided that Ms. Conner had violated Rules 1.3[7] and 3.2.[8] In that same vein, Ms. Conner failed to keep Mr. Boatwright informed as to the status of his appeal in contravention of Rule 1.4.[9] Finally, Ms. Conner failed to act in accordance with Rule 8.4(d)[10] when she failed to appear before this Court, as ordered, for the show cause hearing.

Finally, the HPS's review of Ms. Drum's complaint led to its summation that Ms. Conner violated Rule 1.4(a)[11] when she failed to communicate with her client. Additionally, it was found that Ms. Conner agreed to perform certain legal services, did not

[6](...continued)
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[7]*See* note 5, *supra.*

[8]Rule 3.2 of the West Virginia Rules of Professional Conduct provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

[9]*See* note 6, *supra.*

[10]West Virginia Rule of Professional Conduct 8.4(d) sets forth that "[i]t is professional misconduct for a lawyer to: . . . (d) engage in conduct that is prejudicial to the administration of justice."

[11]*See* note 6, *supra.*

9

complete the same, and failed to return an unearned fee after being discharged. Thus, her

conduct violated Rule 1.16(d).[12] Further, Ms. Conner's failure to deposit the retainer fee into

an IOLTA account contravened Rule 1.15(a).[13] Lastly, it was decided that Ms. Conner

violated Rule 8.1(b)[14] when she failed to comply with the ODC's lawful requests for

_____

[12]Rule 1.16(d) of the West Virginia Rules of Professional Conduct states that

> (d)  Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

[13]Rule 1.15(a) of the West Virginia Rules of Professional Conduct provides as follows:

> (a)  A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

[14]The relevant portion of Rule 8.1(b) of the West Virginia Rules of Professional Conduct states that

> a lawyer . . . in connection with a disciplinary matter, shall not:

(continued...)

10

information.

Based on these findings of misconduct, the HPS presented the following recommended disposition to this Court:

> 1.   That [Ms. Conner's] law license be suspended for a period of thirty (30) days pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.   The Hearing Panel Subcommittee finds that suspension is the appropriate sanction for [Ms. Conner's] misconduct;
>
> 2.   If she has not already done so, that [Ms. Conner] be ordered to reimburse Shawna Swiger her $2,000 retainer fee;
>
> 3.   That following [Ms. Conner's] suspension, [Ms. Conner] will sign and follow a plan of supervised practice for a period of two (2) years with a supervising attorney of [Ms. Conner's] choice, said supervision to be approved by the Office of Disciplinary Counsel and be available to respond to inquiries by the Office of Disciplinary Counsel; and
>
> 4.   That [Ms. Conner] be ordered to reimburse the Lawyer Disciplinary Board the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Thereafter, the ODC filed with this Court its statement of no objection to the HPS's recommendation.   Likewise, Ms. Conner also filed a statement with this Court asserting that

---

[14](...continued)
>        (b) . . . knowingly fail to respond to a lawful demand for information from . . . disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

11

she had no objection to the disposition as recommended by the HPS. This Court, however, did not concur with the recommendations, and the case was set for oral argument.

The ODC filed a brief in accordance with this Court's briefing schedule; however, Ms. Conner failed to file any responsive pleadings in violation of this Court's directive.[15] Because Ms. Conner elected to forgo her opportunity to file a brief, this Court ordered, pursuant to Rule 10(j) of the West Virginia Rules of Appellate Procedure, that Ms. Conner would not be permitted to argue orally before this Court. Significantly, prior to oral argument, the ODC moved this Court to consider an additional aggravating factor and to enhance the thirty-day suspension that previously had been agreed to by the parties. Specifically, the ODC avers that intervening matters had come to light since the time it had filed its original brief with this Court. The motion by the ODC cited to Ms. Conner's failure to file a brief before this Court in this disciplinary matter and its contention that her continuing failure to obey a tribunal was an aggravating factor. Thus, the ODC now requests this Court to "enhance [Ms. Conner's] sanction to include additional time beyond the thirty (30) day suspension recommended by the Hearing Panel Subcommittee." The ODC suggested that Ms. Conner's law license should be suspended for a period to exceed three

---

[15]It is noted that Ms. Conner sent a letter to this Court wherein she stated: "I do not believe that I can more accurately summarize or argue the law relating to this matter than did the Lawyer Disciplinary Counsel. Accordingly, I will waive presentation of a [sic] respondent's brief herein."

12

months.

# II.

# STANDARD OF REVIEW

In lawyer disciplinary proceedings, this Court reviews *de novo* the recommended decision of the HPS:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

While affording deference to the Board, this Court is responsible for determining the ultimate resolution of lawyer disciplinary proceedings. As such, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics of The W. Va. State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984). Mindful of these standards, we proceed to consider the legal arguments.

13

## III.

## DISCUSSION

The ODC's original position urged this Court to accept the recommendations, including the thirty-day suspension, as set forth by the HPS. Ultimately, however, the ODC contends that Ms. Conner engaged in additional misconduct after the HPS completed its report, and that her law license should be suspended for a period exceeding ninety days. In so doing, the ODC contends that Ms. Conner violated duties to her clients, to the public, to the legal system, and to fellow members of the legal profession. Ms. Conner indicated her agreement with the thirty-day suspension and other sanctions as recommended by the HPS, and she presented no further argument or explanation after the ODC increased its request to include more than a ninety-day suspension.

In review of this case, we acknowledge that the ODC is required "to prove the allegations of the formal charge by clear and convincing evidence." Syl. pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W. Va. 788, 461 S.E.2d 850 (1995). In the absence of arguments contrary to the HPS's findings, this Court will not disturb the underlying determination that Ms. Conner violated various provisions of the West Virginia Rules of Professional Conduct. *See Lawyer Disciplinary Bd. v. Cunningham*, 195 W. Va. 27, 34-35, 464 S.E.2d 181, 188-89 (1995) ("The burden is on the attorney at law to show that the factual findings are not supported by reliable, probative, and substantial evidence on the whole

14

adjudicatory record made before the Board.") (internal citation omitted).

Further, in the ODC's motion to consider an additional aggravating factor and to enhance the sanctions against Ms. Conner, the evidence shows that Ms. Conner, once again, ignored a directive of this Court and did not file a responsive brief. Not only does this behavior evince a continued pattern of misconduct, but it also shows a failure to obey an obligation imposed by a tribunal. As set forth in Syllabus point 7 of *Lawyer Disciplinary Board v. Grafton*, 227 W. Va. 579, 712 S.E.2d 488 (2011):

> A person named in a disciplinary proceeding before this Court, who, after the Hearing Panel Subcommittee has filed its Report with the recommended sanctions, commits a violation of the Rules of Professional Conduct related to the facts in the underlying complaint may be subject to an increased degree of discipline. Such subsequent misconduct may be relied upon by this Court as an aggravating factor that justifies enhancement of the recommended sanctions of the Hearing Panel Subcommittee.

Such misconduct is an additional aggravating factor that can be considered by this Court in the ultimate sanctions imposed in this case. As previously explained, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Blair*, 174 W. Va. 494, 327 S.E.2d 671.

We now turn our focus to the appropriate sanctions to impose upon Ms. Conner for her misbehavior. The HPS recommended a thirty-day license suspension, as well as

15

several other lesser sanctions. The ODC now asserts that the license suspension should be for a period exceeding ninety days. As this Court previously has recognized,

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998). After a thorough review of the record, this Court ascertains that Ms. Conner violated all four of the *Jordan* factors. We analyze these factors with the recognition that "attorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice[.]" *Committee on Legal Ethics v. Keenan*, 192 W. Va. 90, 94, 450 S.E.2d 787, 791 (1994).

Ms. Conner violated duties to the clients whose representation is at issue herein. During the pendency of their cases, Ms. Conner failed to perfect appeals, violated her duty of communication with her clients, and agreed to perform certain legal services but failed to perform those services or return the unearned fee after being discharged by the

16

client. Significantly, Ms. Conner failed to appear before this Court, as ordered, for the show cause hearing. Her failure to appear demonstrated conduct that is prejudicial to the administration of justice. Finally, she violated her duties to the legal system and the profession by failing to comply with the ODC's requests for information during the course of her disciplinary matter. Ms. Conner's conduct brought disrepute upon the legal system and profession.

The second factor to consider is whether Ms. Conner's conduct was intentional, knowing, or negligent. The HPS found that the conduct involved was "at a minimum . . . negligent." Ms. Conner stipulated to the allegations contained in the ODC's complaint in regard to the representation of Mr. Boatwright. Further, the allegations in the other complaints were proved by clear and convincing evidence. "Negligence" is defined as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *ABA Model Standards for Imposing Lawyer Sanctions*, Definitions (1992). The evidence in this case establishes by clear and convincing proof that Ms. Conner acted, at a minimum, negligently in her representation of her clients.

The third factor to consider is the actual or potential harm caused by the misconduct. As a result of Ms. Conner's actions, both Mr. Robey's and Mr. Boatwright's

appeals were delayed. Both criminal matters involved extended periods of incarceration, potentially involving harm to her clients through the loss of their freedom. Additionally, Ms. Drum's retainer fee was not returned until after Ms. Conner had been fired and the lawyer disciplinary proceedings had commenced. We previously have recognized that for restitution to be accepted as a mitigating factor, it must be made promptly. *See Lawyer Disciplinary Bd. v. Kupec*, 202 W. Va. 556, 570, 505 S.E.2d 619, 633 (1998). Therefore, we find that the amount of injury is great from both an actual sense and as a potential of increased harm.

Finally, in assessing the appropriate sanctions to be imposed, we examine Ms. Conner's conduct in light of both mitigating and aggravating factors. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003). The *Scott* opinion, at Syllabus point 3, further explains that

> [m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse;

18

and (13) remoteness of prior offenses.

213 W. Va. 209, 579 S.E.2d 550. By contrast, "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Scott, id*.

The HPS found that the remorse shown by Ms. Conner during the disciplinary proceedings constituted a mitigating factor. Conversely, several aggravating factors also were present. Ms. Conner's propensity to ignore requests from the ODC and this Court, Ms. Conner's substantial experience in the practice of law, Ms. Conner's exhibition of a pattern and practice of misconduct by failing to communicate with her clients and failing to diligently pursue cases on behalf of her clients, and Ms. Conner's prior disciplinary proceedings[16] constituted aggravating factors.

Taking into account both the mitigating and the aggravating factors, we conclude that the recommendations submitted by the HPS are too lenient for behavior that has become a clear pattern of continued wrongdoing. In the instant case, the evidence

---

[16]On October 27, 2010, this Court entered an order in Case No. 35434, *Lawyer Disciplinary Board v. Conner*, reprimanding Ms. Conner and ordering that she refund the unearned portion of a fee to her client, James W. Hendrickson, in the amount of $5,143.98; her practice be supervised for a period of one year; during her supervised practice, she was to continue any treatment as prescribed by her treating physician or psychologist; and Ms. Conner was to pay the costs of the disciplinary proceeding in the amount of $1,962.46.

establishes that Ms. Conner violated the Rules of Professional Conduct by failing to appeal Mr. Robey's sentence as he desired, not acting diligently in her representation of Mr. Robey, neglecting to keep Mr. Robey informed as to the status of his case, and ignoring Mr. Robey's attempts to communicate with her. The evidence also establishes that Ms. Conner violated the Rules by not acting diligently and not expediting litigation in her failure to meet numerous deadlines established by this Court to perfect Mr. Boatwright's appeal, failing to keep Mr. Boatwright informed as to the status of his appeal, and engaging in conduct that is prejudicial to the administration of justice due to Ms. Conner's failure to appear before this Court for the show cause hearing. Further, the evidence establishes that Ms. Conner violated the Rules by failing to communicate with Ms. Drum, refusing to return an unearned fee, not depositing the retainer into her IOLTA account, and ignoring the ODC's lawful requests for information. Ms. Conner's consistent failure to respond to the ODC, coupled with her pattern of ignoring directives from this Court, also weighs in favor of an increased sanction. *See Lawyer Disciplinary Bd. v. Grindo*, 231 W. Va. 365, 371, 745 S.E.2d 256, 262 (2013) ("[T]he fact that Mr. Grindo failed to respond to the deadlines and entreaties of this Court regarding the filing of briefs certainly weighs heavily against Mr. Grindo.").

Based on all of the foregoing, we find that a ninety-day suspension from the practice of law is an appropriate sanction. In fashioning the punishment for Ms. Conner's misconduct, we are mindful of our prior holding that,

20

> "'[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987)." Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W. Va. 260, 382 S.E.2d 313 (1989).

Syl. pt. 7, *Jordan*, 204 W. Va. 495, 513 S.E.2d 722. *See also Lawyer Disciplinary Bd. v. Sullivan*, 230 W. Va. 460, 740 S.E.2d 55 (2013) (law license suspended for period of thirty days, based heavily on fact that employment in the public spectrum would provide close supervision and eliminate misconduct).[17] While Ms. Conner was employed in the public realm during the underlying proceedings, she no longer works as an assistant prosecuting attorney. We find Ms. Conner's conduct similar to that displayed by the attorney in *Lawyer Disciplinary Board v. Hollandsworth*, No. 14-0022 (W. Va. Sept. 18, 2014). In *Hollandsworth*, this Court concurred with the HPS's recommendation that Mr. Hollandsworth receive a ninety-day license suspension, along with other sanctions, for failing to abide by his duties of diligence and communication owed to his clients when he neglected

---

[17]We note that one reason for the ODC's initial agreement with the thirty-day suspension arose because Ms. Conner was no longer a solo practitioner. Rather, she had accepted a position as an assistant prosecuting attorney. As such, "she most likely has a greater support system in her daily practice and a lesser likelihood that her client, the State of West Virginia, will be left without representation, as would likely be the case if [Ms. Conner] remained a solo practitioner." Unfortunately, Ms. Conner's position with the prosecutor's office ended December 31, 2014. Thus, she no longer holds a position that would provide greater oversight in her daily practice.

21

to pursue his client's petition for writ of habeas corpus, disregarded the duty to keep his client reasonably informed about the status of the matter, ignored his client's reasonable requests for information, and failed to provide his client with sufficient information about the matter so that his client could make an informed decision. Moreover, Mr. Hollandsworth disregarded the circuit court's instructions.

Likewise, in Ms. Conner's case, we impose a ninety-day suspension from the practice of law as we determine that the egregiousness of the behavior warrants more than a thirty-day suspension. Further, we adopt the remaining recommendations made to this Court by the HPS.

## IV.

## CONCLUSION

For the foregoing reasons, we impose the following sanctions: (1) that Ms. Conner's law license be suspended for a period of ninety days pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure; (2) that, if she has not already done so, Ms. Conner be ordered to reimburse Shawna Drum her $2,000 retainer fee; (3) that following Ms. Conner's suspension, she will sign and follow a plan of supervised practice for a period of two (2) years with a supervising attorney of Ms. Conner's choice, said supervision to be approved by the Office of Disciplinary Counsel and be available to respond to inquiries by

22

the Office of Disciplinary Counsel; and (4) that Ms. Conner be ordered to reimburse the

Lawyer Disciplinary Board the costs of these proceedings pursuant to Rule 3.15 of the Rules

of Lawyer Disciplinary Procedure.

Law License Suspended and Other Sanctions.