# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**LAWYER DISCIPLINARY BOARD,**
**Petitioner**

**vs)  No. 17-0896**

**DAVID M. ANDERSON,**
**A MEMBER OF THE WEST VIRGINIA STATE BAR,**
**Respondent**

**FILED**

**May 20, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The Lawyer Disciplinary Board ("Board") initiated this lawyer disciplinary proceeding against the respondent, David M. Anderson, through a statement of charges filed on October 10, 2017.[1]  Following an evidentiary hearing, the Board's Hearing Panel Subcommittee ("HPS") presented its recommended disposition to this Court. Finding the evidence supported the charges, the HPS recommended that Mr. Anderson's law license be suspended for a period of six months but that after serving sixty days of suspension, his law license be automatically reinstated with the remainder of the term of suspension stayed for a term of supervised probation.  The HPS also recommended other sanctions, including additional continuing legal education classes and payment of the costs of this proceeding. Although the Office of Disciplinary Counsel ("ODC") and Mr. Anderson consented to the proposed sanctions, this Court scheduled the matter for oral argument with briefs to be submitted by the parties in support of their respective positions.[2]

This Court has now carefully considered the briefs and oral arguments of the parties, the submitted record, and the pertinent authorities.  Upon review, we find that the record supports the recommendation of the HPS, and accordingly, we impose the recommended sanctions as set forth below.  Because there is no substantial question of law and no

---

[1] The complaint giving rise to this lawyer disciplinary proceeding was filed in 2014. However, because of a related pending civil case, no formal disciplinary action was taken until that matter was resolved.

[2] Rachael L. Fletcher Cipoletti, Chief Lawyer Disciplinary Counsel, appeared on behalf of the Board.  Mr. Anderson was represented by attorney Michael T. Clifford.

1

prejudicial error, a memorandum decision is appropriate pursuant to Rule 21 of the Rules of Appellate Procedure.

Mr. Anderson was admitted to the West Virginia State Bar on November 28, 2000. This disciplinary matter arises out of Mr. Anderson's representation of Greg White in two criminal cases, which began in June 2010. At that time, Mr. Anderson was a solo practitioner residing in Marion County where he was primarily engaged in representing criminal defendants through court appointments.

In November 2007, Mr. White pled guilty to a one count Information in the Circuit Court of Marion County. He was sentenced to two years of incarceration in January 2008; however, the sentence was suspended, and he was placed on probation for three years and required to serve six months of home confinement. Mr. Anderson was appointed to represent Mr. White by order dated June 21, 2010; he replaced Mr. White's previous court-appointed attorney. In March 2011, Mr. White was charged with violating his probation; he was incarcerated pending a final probation revocation hearing. In August 2011, Mr. White's probation was revoked, and he was ordered to serve his two-year sentence. Mr. White requested home confinement, which was granted, and he was released from incarceration on August 19, 2011. A week later, Mr. White was arrested on another criminal charge. Consequently, Mr. White's home confinement was revoked in October 2011, and he was ordered to serve his two-year sentence for his first criminal conviction in the penitentiary. On February 7, 2012, Mr. White was indicted on the second criminal charge. He was arraigned later that month but posted no bond. He remained incarcerated on his first criminal conviction. On March 26, 2012, Mr. Anderson filed a motion to continue Mr. White's trial for his second criminal case to the June 2012 term of court.

Mr. White discharged his sentence for his first criminal conviction on March 29, 2012. He remained incarcerated on the second criminal charge as he had not posted a bond. In September 2012, having not heard from Mr. Anderson for months, Mr. White wrote a letter to the presiding judge stating that he had not spoken with his attorney since his arraignment and did not know the status of his case. The circuit court responded to Mr. White and copied Mr. Anderson on the letter. On November 9, 2012, a Nolle Order, which dismissed the indictment on Mr. White's second criminal charge, was signed by the circuit court and entered by the circuit clerk of Marion County. A copy of the Nolle Order was sent to Mr. Anderson who was still Mr. White's counsel of record. Mr. Anderson did not contact Mr. White about the Nolle Order and did not send him a copy.

By letter dated May 30, 2013, Mr. White, who remained incarcerated in the North Central Regional Jail, contacted the circuit court again and complained that Mr. Anderson had still not communicated with him since February 2012. The circuit court immediately responded and directed Mr. Anderson to contact his client. Approximately one month later, Mr. White complained again by letter that he had not heard from Mr. Anderson and requested the appointment of new counsel. Another letter was sent by Mr. White on July

2

20, 2013, wherein he stated that he still had not heard from Mr. Anderson and requested new counsel. Mr. White indicated that he believed he had discharged his first sentence and was incarcerated on a detainer; he remained unaware of the Nolle Order. The circuit court responded again by directing Mr. Anderson to contact Mr. White.

Mr. White also filed complaints against Mr. Anderson with the ODC while he was incarcerated. The first complaint was dismissed because Mr. White failed to provide an original notarized signature giving the ODC authorization to proceed with an investigation. The second complaint was also closed without an investigation; the ODC informed Mr. White that a claim of ineffective assistance of counsel needed to be addressed by the court with appropriate jurisdiction.

On January 16, 2014, Mr. White contacted Belinda A. Haynie, a Morgantown attorney, by phone from the regional jail, having obtained her name and number from another inmate. Mr. White explained that he was seeking a new attorney. Ms. Haynie made a phone call on Mr. White's behalf and immediately discovered the November 9, 2012, Nolle Order. The Nolle Order was sent to the regional jail and, within three hours of Mr. White's phone call to Ms. Haynie, he was released from incarceration. Mr. White had spent 433 days in custody without any pending charges, detainer, or remaining sentence imposed.

In November 2014, Mr. White through Ms. Haynie filed a civil action against Mr. Anderson and others.[3] Ms. Haynie also filed an ethics complaint with the ODC on Mr. White's behalf, which resulted in this disciplinary proceeding. Subsequently, the civil action was settled.

---

[3]In addition to Mr. Anderson, Mr. White filed suit against the West Virginia Regional Jail and Correctional Facility Authority; Joe DeLong, individually and as executive director of the West Virginia Regional Jail and Correctional Facility Authority; the North Central Regional Jail Authority; George Trent, individually and as administrator of the North Central Regional Jail Authority; the Marion County County Commission; the Circuit Clerk of Marion County; Rhonda Starn, individually and as the Circuit Clerk of Marion County; Pat Wilson, Marion County Prosecuting Attorney; Leann Hawkins, individually and as former assistant prosecutor of Marion County; and Jane Doe, counselors with the North Central Regional Jail. Mr. White's claims against the jail facilities and jail employees were based on an alleged failure to have adequate procedural safeguards in place to prevent violation of an inmate's civil rights. With respect to the Marion County Commission and circuit clerk, liability was asserted for the failure to inform the jail of entry of the Nolle Order. Finally, Mr. White alleged that the prosecutors were liable for neglecting to place a directive in the Nolle Order requiring the circuit clerk to serve a copy of the Nolle Order on the North Central Regional Jail.

On October 10, 2017, the Board filed its statement of charges against Mr. Anderson with this Court. An evidentiary hearing was held before the HPS on February 6, 2018, at which time testimony was provided by Ms. Haynie, Mr. White, and Edmund Rollo, an attorney who served as co-counsel with Ms. Haynie on Mr. White's civil action. Mr. Anderson also testified on his own behalf. Based on the testimony and exhibits that were admitted into evidence, the HPS concluded that the Mr. Anderson violated Rules 1.1; 1.3; 1.4; and 8.4(d) of the Rules of Professional Conduct.[4]

The HPS first determined that Mr. Anderson violated Rule 1.1, which addresses "competence" and provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The HPS concluded that Mr. Anderson failed to provide Mr. White with competent representation and "failed to adhere to the general standards expected of attorney appointed to represent a client in a criminal matter." The HPS further found that Mr. Anderson violated Rule 1.3, which concerns "diligence" and provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." This finding was based on Mr. Anderson's "fail[ure] to send the Nolle Order to Mr. White or ensure that he was properly released from North Central Regional Jail upon entry of the Order." The HPS concluded that Mr. Anderson violated Rules 1.4(a) and (b) which concern "communication" by "failing to keep Mr. White reasonably informed as to the status of his case" and failing to respond to his requests for information. Rule 1.4 provides:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
>
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Finally, the HPS found that Mr. Anderson violated Rule 8.4 which concerns "misconduct" and provides: "It is misconduct for a lawyer to . . . (d) engage in conduct that is prejudicial to the administration of justice." The HPS determined that Mr. White violated this rule by his "omissions and failures as counsel of record [that] allowed Mr. White to be wrongfully detained and imprisoned at North Central Regional Jail for 433 days after he should have been released."

---

[4] Because Mr. Anderson's misconduct occurred prior to January 1, 2015, the prior version of the Rules of Professional Conduct applies.

The HPS concluded that the circumstances warranted a suspension of Mr. Anderson's law license with probation, and the parties agreed. Accordingly, the HPS recommended that the following sanctions be imposed:

a. That Mr. Anderson's law license be suspended for a period of six (6) months;
b. Mr. Anderson will serve sixty (60) days of the suspension and the remainder of the term of suspension will be stayed for a term of supervised probation;
c. That upon his suspension, Mr. Anderson must comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure;[5]
d. Mr. Anderson be subject to automatic reinstatement of his law license at the end of the sixty (60) day suspension;
e. If Mr. Anderson breaches the terms of his probation during the period of the term of suspension, Mr. Anderson's license be immediately suspended for the remainder of the term of suspension, upon proper petition to the Court;
f. Should further suspension occur, Mr. Anderson be subject to the requirement to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure;
g. Mr. Anderson take an additional six hours of continuing legal education in the area of criminal law, to be completed during the period of suspension; and
h. Mr. Anderson pay the costs of this disciplinary proceeding pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

The recommended sanctions were presented to this Court on April 13, 2018. By order entered June 5, 2018, this Court remanded the matter to the HPS with directions to set forth the terms of probation and resubmit its report. Upon resubmission, this Court did not concur with the recommended sanctions and, instead, directed the parties to file briefs and scheduled the matter for oral argument.

As set forth in syllabus point three of *Committee on Legal Ethics of the W.Va. State Bar v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994):

---

[5] Rule 3.28 of the Rules of Lawyer Disciplinary Procedure requires attorneys to notify their clients of their suspension or disbarment.

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Although we defer to the Board's factual findings and respectfully consider its recommendations, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Committee on Legal Ethics of the W.Va. State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

In this case, the ODC met its burden of proving that Mr. Anderson violated the Rules of Professional Conduct,[6] and he does not dispute the findings of the HPS in that regard. Our focus is the appropriate sanctions for Mr. Anderson's misconduct.

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. Pt. 4, *Office of Lawyer Disc. Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998). We also give consideration to the fact that "attorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of

---

[6] *See* Syl. Pt. 1, in part, *Lawyer Disc. Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995) ("Rule 3.7 of the Rules of Lawyer Disciplinary Procedure, effective July 1, 1994, requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence.").

attorneys and to safeguard its interest in the administration of justice[.]" *Committee on Legal Ethics of the W.Va. State Bar v. Keenan*, 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994). Consequently, "[a]lthough Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates the factors to be considered in imposing sanctions after a finding of lawyer misconduct, a decision on discipline is in all cases ultimately one for the West Virginia Supreme Court of Appeals." *Jordan*, 204 W.Va. at 497, 513 S.E.2d at 724, syl. pt. 5, in part.

With regard to the first *Jordan* factor, Mr. Anderson clearly violated a duty owed to his client, to the public, to the legal system, and to the legal profession. Acknowledging that he violated his duties to his client, Mr. Anderson testified at the hearing before the HPS as follows:

> I didn't believe [Mr. White]. I chose not to believe him. I'm supposed to protect these people. I'm sorry. This is embarrassing.
>
> But I look at myself as the last line of defense, the first line and the last line, and I dropped it. I failed him because I failed to believe him and I actually became aggravated with him because I thought he was wrong. And I was wrong.

Mr. Anderson had a duty to communicate with Mr. White and a duty to ensure that he was not wrongfully detained upon entry of the Nolle Order. Not only did Mr. Anderson not inform Mr. White that the Nolle Order had been entered or confirm that it was sent to the jail, he repeatedly failed to communicate with Mr. White even when instructed to do so by the circuit court.

The second *Jordan* factor considers whether the attorney's actions were intentional, knowing, or negligent. Here, the evidence established that Mr. Anderson intentionally ignored his client's pleas for information regarding the status of his case and the circuit court's repeated directives to communicate with his client. However, there was absolutely no evidence indicating that Mr. Anderson intended to leave Mr. White wrongfully incarcerated. During the proceedings below, Mr. Anderson explained,

> [T]he assistant prosecutor filed a Nolle Order dismissing [Mr. White's second criminal case]. I simply entered the order in my case file. Sometime later, when Mr. Anderson wrote to me saying that he should be released from jail I neglected to check my file, thinking he was being held for refusal to attend the sex offender program that was one of the issues throughout the [probation] revocation hearings. Mr. White had insisted that he could not attend the mandated

7

> classes that [the probation officers] insisted were mandatory or he would remain incarcerated.
>
> I must confess that I am at fault for not sending the order to the jail. I mistakenly believed that it would have been sent by the Clerk's office. I recently checked with the circuit [c]ourt [c]lerk of Marion County who indicated to me that her office does send such orders to the jail as a standard rule. However, I did not check at the time. Mr. White insisted that he should not be in jail throughout my dealings with him and I thought his later claims were of the same nature. I am deeply sorry for my mistake and the fact that a client served more time in jail than was intended.

Had Mr. Anderson responded to any of the Mr. White's inquiries or the circuit court's directives to contact his client, he would have undoubtedly determined, as Ms. Haynie did, that Mr. White was wrongfully incarcerated.

The third *Jordan* factor considers the amount of actual or potential injury caused by the lawyer's misconduct. Undisputedly, Mr. White suffered a great amount of real injury as a result of Mr. Anderson's misconduct. He was wrongfully incarcerated for 433 days; he suffered an injury that is irreversible.

The final *Jordan* factor considers the existence of any aggravating or mitigating factors. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Lawyer Disc. Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). To the contrary, "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." *Id.* at 209, 579 S.E.2d at 550, syl. pt. 2.

The HPS found three aggravating factors present in this case: "1. substantial experience in the practice of law; 2. multiple offenses of ignoring his client's pleas for assistance; and 3. willful pattern of professional insubordination and disrespect towards the tribunal by failing to follow the [c]ourt's directives to contact his incarcerated client." The evidence supports these findings.

Likewise, the evidence supports the HPS's findings with regard to the existence of six mitigating factors. This Court has recognized that

> [m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include:

(1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

*Id.* at 210, 579 S.E.2d at 551, syl. pt. 3. The mitigating factors in this case as determined by the HPS are:

> 1. absence of a prior disciplinary record; 2. timely good faith effort to rectify consequences of actions by his actions in the civil suit filed by his client; 3. cooperation with ODC throughout investigation; 4. reputation that this misconduct was aberrant; 5. imposition of civil penalty; and 6. remorse.

Based upon its consideration of the *Jordan* factors and precedent indicating that suspension is appropriate when a lawyer fails to perform services for a client that causes injury or engages in a pattern of neglect that causes injury,[7] the HPS recommended that Mr. Anderson's law license be suspended for six months. However, the HPS further recommended that after sixty days of suspension, Mr. Anderson's law license be automatically reinstated and that his remaining term of suspension be stayed for a term of supervised probation. The HPS also recommended additional sanctions as set forth above.

---

[7] *See Lawyer Disc. Bd. v. Palmer*, 238 W.Va. 688, 798 S.E.2d 610 (2017) (thirty-day suspension for failure to timely file habeas petition and failure to communicate with client); *Lawyer Disc. Bd. v. Sturm*, 237 W.Va. 115, 785 S.E.2d 821 (2016) (ninety-day suspension for failure to file habeas petition, failure to file criminal appeal, and failure to communicate with clients); *Lawyer Disc. Bd. v. Conner*, 234 W.Va. 648, 769 S.E.2d 25 (2015) (ninety-day suspension for failure to file appeal, failure to communicate with clients, failure to return unearned fee, failure to comply with ODC's requests, and failure to appear before this Court); *Lawyer Disc. Bd. v. Sullivan*, 230 W.Va. 460, 740 S.E.2d 55 (2013) (thirty-day suspension for failure seek correction of sentencing order resulting in client remaining imprisoned six months longer than may have been required, failure to adequately communicate with client, and failure to respond to the ODC); *Committee on Legal Ethics of the W.Va. State Bar v. Karl*, 192 W.Va. 23, 449 S.E.2d 277 (1994) (ninety-day suspension for failure to communicate with clients and ODC and lack of diligence).

Our determination of the appropriate sanctions is guided by the principles set forth in syllabus point seven of *Jordan*:

> '"In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987)." Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989).

204 W.Va. at 497, 513 S.E.2d at 724, syl. pt. 7. Based upon all the above and our careful review of the record, we agree with the HPS that a suspension with probation is the appropriate sanction for Mr. Anderson's misconduct. Mr. Anderson willingly admitted to the misconduct and expressed remorse not only in this proceeding but during the civil action instituted by Mr. White. The record indicates that Mr. Anderson was instrumental in securing financial restitution for Mr. White through a quick and fair settlement of the civil action. Furthermore, the evidence submitted at the HPS hearing established that Mr. Anderson's conduct was an aberration and that he has taken steps to make sure that the misconduct never occurs again, specifically changing his practice to an office setting with other attorneys and a support staff.

In addition, the sanctions proposed by the HPS are consistent with the disposition of other disciplinary cases involving violations of the same Rules of Professional Conduct.[8] In the most factually similar case, *Sullivan,* this Court imposed a thirty-day suspension upon the attorney for failure to take action to have his client's facially inaccurate commitment order corrected resulting in the client "remaining imprisoned six months longer than may have been required had the sentencing order been corrected." *Id.* at 463, 740 S.E.2d at 58. Unlike Mr. Sullivan, who had five prior admonishments for similar misconduct, Mr. Anderson had no prior disciplinary record. Admittedly, Mr. Anderson's client was wrongfully incarcerated for a longer period of time, but the recommended suspension clearly reflects that fact.

Accordingly, based upon all of the above, Mr. Anderson's law license shall be suspended for a period of six (6) months. Mr. Anderson shall serve sixty (60) days of the suspension and the remainder of the term of suspension shall be stayed for a term of supervised probation. Mr. Anderson shall comply with the mandates of Rule 3.28 of the

---

[8] *See* note 7, *supra.*

Rules of Lawyer Disciplinary Procedure. Mr. Anderson shall be subject to automatic reinstatement of his law license at the end of the sixty (60) day suspension. If Mr. Anderson breaches the terms of his probation during the period of the term of suspension, Mr. Anderson's license shall be immediately suspended for the remainder of the term of suspension, upon proper petition to this Court. Should further suspension occur, Mr. Anderson shall be subject to the requirement to petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure. In addition, Mr. Anderson shall take an additional six hours of continuing legal education in the area of criminal law, to be completed during the period of suspension, and Mr. Anderson shall pay the costs of this disciplinary proceeding pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law license suspended and other sanctions imposed.

**ISSUED:** May 20, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**DISSENTING:**

Justice Margaret L. Workman
Justice Tim Armstead

**Justice Armstead, joined by Justice Workman, dissenting:**

It is undisputed that Mr. Anderson violated the following rules of professional conduct: 1.1 (competence), 1.3 (diligence), 1.4 (communication), and 8.4(d) (prejudicial conduct to administration of justice).

I agree with the majority's analysis of the *Jordan*[9] factors: 1) Mr. Anderson clearly violated a duty owed to his client, to the public, to the legal system and to the legal

---

[9] See Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

profession; 2) Mr. Anderson intentionally ignored his client's pleas for information regarding the status of his case, and, crucially, ignored the circuit court's repeated directives to communicate with his client; 3) the injury suffered by Mr. Anderson's client was immense and "irreversible"—433 days of incarceration; and 4) a number of aggravating and mitigating factors are present.

I respectfully depart from the majority's conclusion that "a suspension with probation is the appropriate sanction for Mr. Anderson's misconduct." In devising suitable sanctions for attorney misconduct, this Court has recognized that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Lawyer Disciplinary Bd. v. Taylor*, 192 W.Va. 139, 144, 451 S.E.2d 440, 445 (1994). Because of the extreme injury, 433 days of incarceration suffered by Mr. White as a result of Mr. Anderson's misconduct, I believe the suspension imposed is inadequate to reassure the public as to "the reliability and integrity of attorneys."

Mr. Anderson's misconduct is egregious because the injury suffered by his client would have been minimized had Mr. Anderson complied with multiple circuit court orders directing him to communicate with Mr. White. In previous disciplinary matters, this Court has suspended attorneys for failing to communicate with a client.[10] The lack of communication in the present case is especially egregious because it resulted in Mr. Anderson's client spending over a year in prison beyond what he was legally required to serve.

Based on the foregoing, I respectfully dissent.

---

[10] *See Lawyer Disciplinary Board v. Sturm*, 237 W.Va. 115, 785 S.E.2d 821 (2016) (this Court issued a ninety-day suspension for an attorney's failure to file habeas pleadings, communicate with her clients, deposit a retainer in a trust account, and make a timely refund of the retainer); *Lawyer Disciplinary Board v. Hollandsworth*, No. 14-0022 (W.Va. Sept. 18, 2014) (unreported order) (an attorney received a ninety-day suspension for failing to pursue a habeas matter and for failing to communicate with his client); *Lawyer Disciplinary Board v. Conner*, 234 W.Va. 648, 769 S.E.2d 25 (2015) (lawyer suspended for ninety days for violations of Rules of Professional Conduct, primarily a pattern of neglect and failure to communicate); *Committee on Legal Ethics v. Karl*, 192 W.Va. 23, 449 S.E.2d 277 (1994) (three month suspension from practice of law for lack of diligence and failure to communicate).