# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2019 Term

_____

No. 18-0617

_____

**FILED**

**October 24, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**LAWYER DISCIPLINARY BOARD,**
Petitioner

**V.**

**TRAVIS C. SAYRE,**
A Member of the West Virginia State Bar,
Respondent

_____

Lawyer Disciplinary Proceedings
No. 17-03-012
No. 17-03-185
No. 17-03-186

**LAW LICENSE SUSPENDED AND OTHER SANCTIONS IMPOSED**
_____

Submitted: October 1, 2019
Filed: October 24, 2019

Rachael L. Fletcher Cipoletti
Chief Lawyer Disciplinary Counsel
Andrea J. Hinerman
Senior Lawyer Disciplinary Counsel
Office of Lawyer Disciplinary Counsel
Charleston, West Virginia
Attorneys for the Petitioner

Harry G. Deitzler
Hill, Peterson, Carper, Bee & Deitzler,
PLLC
Charleston, West Virginia
Attorney for the Respondent

**JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syllabus point 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

2. "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syllabus point 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

3. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus point 4, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

4. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syllabus point 3, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

5. "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus point 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

**Jenkins, Justice:**

This lawyer disciplinary proceeding against Travis C. Sayre ("Mr. Sayre") was brought to this Court by the Office of Disciplinary Counsel ("ODC") on behalf of the Lawyer Disciplinary Board ("LDB"). The Hearing Panel Subcommittee ("HPS") of the LDB recommended the following disposition: that Mr. Sayre's license to practice law be suspended for a period of ninety days; that his license be automatically reinstated at the end of his suspension (pursuant to Rule 3.31 of the West Virginia Rules of Lawyer Disciplinary Procedure, if Mr. Sayre has entered into a supervision agreement and an agreement to pay the costs of the disciplinary proceedings); that he undergo a period of supervised practice for two years with an attorney in good standing with the West Virginia State Bar; and that he pay the costs of the proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure. The ODC, LDB, and Mr. Sayre all agreed with the stipulated violations and the sanctions recommended by the HPS.

Upon careful review of the record submitted, the parties' briefs and oral arguments, and the relevant law, this Court disagrees with the recommendations of the HPS, and finds that harsher sanctions are warranted. We also find that Mr. Sayre did not violate Rule 1.8(j) of the West Virginia Rules of Professional Conduct. Therefore, we modify the HPS's recommendation and order that Mr. Sayre be suspended from the practice of law for one hundred twenty (120) days with no automatic reinstatement and that Mr. Sayre complete six (6) hours of CLE in ethics over and above the ethics requirements. Finally, we adopt the remainder of the HPS's recommended sanctions.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Sayre is a practicing attorney in Parkersburg, West Virginia. He was admitted to the West Virginia State Bar on September 20, 2011, having passed the bar exam. Mr. Sayre was also admitted to practice before the Veteran's Administration in January of 2012. As such, Mr. Sayre is subject to the disciplinary jurisdiction of this Court and its properly constituted LDB.

### A. Count I—Complaint of the Office of Lawyer Disciplinary Counsel

The events that led to Mr. Sayre's conduct underlying this disciplinary proceeding first originated in 2016 when Mr. Sayre was appointed to be counsel in a criminal matter arising in Wood County. An order adjudging Mr. Sayre's client guilty upon a jury verdict of guilty to the offense of second-degree murder was entered by the Circuit Court of Wood County on March 14, 2016. Mr. Sayre and another attorney were then appointed as appellate counsel. On March 15, 2016, Mr. Sayre filed a request for transcripts in the case. Three days later, he filed a notice of appeal with the Supreme Court of Appeals of West Virginia. A scheduling order was entered by the Supreme Court of Appeals of West Virginia on April 1, 2016, setting the deadline for perfecting the appeal as July 15, 2016.

Mr. Sayre did not perfect the appeal before the deadline. On July 22, 2016, a notice of intent to sanction was entered by this Court, directing him to perfect the appeal within ten days and show good cause as to why the appeal was not timely perfected.[1] On August 9, 2016, Mr. Sayre filed a motion to extend the deadline and requested an additional sixty days to perfect the appeal, noting that he had received the trial transcript within the past thirty days. His motion was granted, and the deadline for perfecting the appeal was extended to September 15, 2016.

Mr. Sayre filed two more motions to extend the deadline to perfect the appeal—both of these motions were untimely. In his motion dated September 16, 2016, he requested an additional sixty days to perfect the appeal and asserted that he had not been able to completely review the transcripts or obtain feedback from his client to complete the brief. This motion was granted, and he was ordered to perfect the appeal on or before October 17, 2016. Later, on October 26, 2016, he filed another motion to extend, citing an overload of appointed work and a recent illness, and advised that he would have the appeal perfected by October 28, 2016. Mr. Sayre did not file the appeal by October 28, 2016, and the Court entered another notice of intent to sanction on November 4, 2016, directing him to file the brief within fifteen days, and show cause as to why the appeal was not perfected

---

[1] The order entered July 22, 2016, directed Mr. Sayre and another attorney to perfect the appeal or be subject to sanctions. However, on July 26, 2016, the other attorney moved to withdraw as counsel as she had taken a position with the Prosecuting Attorney's Office. Her motion was granted that same day.

timely. Mr. Sayre filed his brief on January 4, 2017.[2] This Court considered the appeal on the merits and issued a unanimous decision affirming the order sentencing Mr. Sayre's client.

### B. *Count II—Complaint of the Office of Lawyer Disciplinary Counsel*

Pursuant to Rule 2.4[3] of the West Virginia Rules of Lawyer Disciplinary Procedure, the ODC initiated this complaint after a staff attorney at the Office of the Clerk filed a complaint at the direction of the Court on April 27, 2017. This complaint involved an abuse and neglect matter, *In Re: J.R., B.R., G.R., and T.R.*, where Mr. Sayre was the court appointed attorney for S.R., mother to the infant children at issue. At a dispositional hearing held on August 29, 2016, the circuit court denied S.R. an improvement period and terminated S.R.'s parental rights to the children. S.R. declared on the record that she

---

[2] A rule to show cause was issued on this same day, but it was dismissed as moot given that the brief was filed.

[3] Rule 2.4 of the West Virginia Rules of Lawyer Disciplinary Procedure states:

> The details of complaints filed or investigations conducted by the Office of Disciplinary Counsel shall be confidential, except that when a complaint has been filed or an investigation has been initiated, the Office of Disciplinary Counsel may release information confirming or denying the existence of a complaint or investigation, explaining the procedural aspects of the complaint or investigation, or defending the right of the judge to a fair hearing. Prior to the release of information confirming or denying the existence of a complaint or investigation, reasonable notice shall be provided to the judge.

wanted to pursue the appeal, and this decision was reflected in the dispositional order that set the statutory deadline to perfect the appeal as October 31, 2016. The order, in relevant part, states:

> Respondent Mother was advised of her right to appeal any adverse decision by this Court, that she only has two months to file such an appeal, and that she should stay in contact with her attorney to assist in the preparation of an appeal. The Respondent mother wishes to appeal. Travis Sayre, Esq. is appointed to represent the Respondent mother in that appeal.

Mr. Sayre did not pursue the appeal. In response to correspondence from the ODC concerning the failure to perfect the appeal, Mr. Sayre responded that he met with his client and she advised that she was retaining new counsel because of his lack of diligence in the case. He advised the ODC that he gave his client a copy of her file and believed that he was discharged of his further responsibilities as counsel; however, he did not file a motion to withdraw. Mr. Sayre stated that he "became aware" in January of 2017 that his client had not retained new counsel to pursue the appeal and he felt compelled to file the notice of appeal on her behalf. On January 31, 2017, Mr. Sayre served a motion to extend the deadline on the West Virginia Attorney General Appellate Division, but did not file a notice of appeal with the Supreme Court of Appeals of West Virginia until March 6, 2017. Counsel for the parties objected to Mr. Sayre's filing. In Mr. Sayre's sworn statement, he admitted that he failed to properly calendar the date of the notice of appeal and missed the October 1, 2016 deadline.

5

### C. *Count III—Complaint of the Office of Lawyer Disciplinary Counsel*

In a similar complaint, the ODC alleged that Mr. Sayre represented M.L., a mother of two infants, in an abuse and neglect matter, *In Re: A.D. and T.D*. At a dispositional hearing on September 19, 2016, the circuit court denied a request for an improvement period and terminated M.L.'s parental rights to the children. The dispositional order dated September 23, 2016, noted that the father and mother desired to appeal and that Mr. Sayre was appointed to represent the mother in that appeal.[4] The deadline to perfect the appeal was November 22, 2016. Despite Mr. Sayre's declaration to the court that M.L. wished to appeal, Mr. Sayre did not pursue the appeal.

The ODC sent Mr. Sayre correspondence to seek information as to why he had not filed the appeal. Per Mr. Sayre's response, prior to the hearing, his client advised him that she did not wish to appeal, but changed her mind during the hearing, and then reversed her decision yet again, and told him after the hearing not to pursue the appeal. This change was not documented by Mr. Sayre. Five months later, Mr. Sayre was attending a hearing in another matter, when he was made aware of M.L.'s wish to appeal from a circuit court judge who was handling another abuse and neglect proceeding where the mother was involved, but where Mr. Sayre was not counsel of record. Mr. Sayre filed a notice of appeal and a motion to extend the deadline with the Supreme Court of Appeals

---

[4] The court terminated the parental rights of the father by the same order. The father timely appealed, and the circuit court's decision was affirmed by this Court in a memorandum decision.

of West Virginia on March 9, 2017. This Court denied Mr. Sayre's motion and referred the matter to the ODC as he failed to timely pursue M.L.'s appeal.

### D. Count IV—Complaint of the Honorable Jason Wharton

Mr. Sayre represented L.S., who entered a plea of guilty to the offense of possession of a controlled substance. L.S. was sentenced to a period of six months of imprisonment, but the court ordered the sentence suspended for probation for a period of three years. On April 27, 2017, Judge Jason Wharton, in his capacity of Chief Judge of the Circuit Court of Wood County, met with the adult probation officer to discuss the status of L.S., who was on supervised probation. The probation officer conducted a search of L.S.'s phone and found that, during the course of the probation, Mr. Sayre and L.S. had engaged in multiple inappropriate conversations on Facebook messenger in February and March 2017, during the period when L.S. could have filed a motion for a reconsideration of her sentence.

On April 28, 2017, pursuant to his judicial reporting obligations as outlined in Rule 2.15 of the West Virginia Code of Judicial Conduct, Judge Wharton reported Mr. Sayre's actions to the ODC.[5] By letter dated May 3, 2017, the ODC directed Mr. Sayre to

---

[5] Rule 2.15 of the West Virginia Code of Judicial Conduct states, in relevant part: "A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate authority."

file a response to the complaint.  In his verified response, Mr. Sayre advised that he considered his representation of L.S. concluded after the entry of her guilty plea.  As to the allegations, Mr. Sayre admitted to exchanging text messages that are "mutually suggestive of sexual conduct" and stated that the two "discussed having sex" and other matters that he appreciates to be "inappropriate" but denied ever having physical contact with L.S.

### E.  Statement of Charges and Recommendation of the HPS

A Statement of Charges was issued against Mr. Sayre, and filed with this Court on July 9, 2018.  It set forth the following alleged violations of the West Virginia Rules of Professional Conduct: Rules 1.1[6] and 1.2(a)[7] for failure to provide competent representation to his clients consistent with their stated objectives of timely pursuing

---

[6] Rule 1.1 of the West Virginia Rules of Professional Conduct provides that "[a] lawyer shall provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[7] Rule 1.2(a) of the West Virginia Rules of Professional Conduct provides, in pertinent part, that

> a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued.  A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation.  A lawyer shall abide by a client's decision whether to settle a matter.  In a criminal case, the lawyer shall abide by the client's decision, after consultation, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

appeals; Rule 1.3[8] for failure to diligently pursue his clients' appeals; Rules 1.4(a)[9] and

1.4(b)[10] for failure to adequately keep his clients informed and for failure to communicate;

Rule 3.2[11] for failure to make efforts to expedite appeals consistent with the desires of his

---

[8] Rule 1.3 of the West Virginia Rules of Professional Conduct provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[9] Rule 1.4(a) of the West Virginia Rules of Professional Conduct provides:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

[10] Rule 1.4(b) of the West Virginia Rules of Professional Conduct provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[11] Rule 3.2 of the West Virginia Rules of Professional Conduct provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

clients; Rules 3.4(c)[12] and 8.4(d)[13] because he repeatedly violated the Rules of Appellate Procedure by failing to comply with multiple orders issued by the Supreme Court of Appeals of West Virginia; and Rules 1.8(j)[14] and 8.4(a)[15] for knowingly engaging in inappropriate and sexually suggestive communications with the intent of initiating a sexual relationship with his court-appointed client. Mr. Sayre timely filed his answer to the statement of charges on August 6, 2018. A hearing was held before the HPS on November 8, 2018, during which Mr. Sayre provided sworn testimony.

---

[12] Rule 3.4(c) of the West Virginia Rules of Professional Conduct provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

[13] Rule 8.4(d) of the West Virginia Rules of Professional Conduct provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."

[14] Rule 1.8(j) of the West Virginia Rules of Professional Conduct provides:

> A lawyer shall not have sexual relations with a client whom the lawyer personally represents during the legal representation unless a consensual sexual relationship existed between them at the commencement of the lawyer/client relationship. For purposes of this rule, "sexual relations" means sexual intercourse or any touching of the sexual or other intimate parts of a client or causing such client to touch the sexual or other intimate parts of the lawyer for the purpose of arousing or gratifying the sexual desire of either party or as a means of abuse.

[15] Rule 8.4(a) of the West Virginia Rules of Professional Conduct provides that "[i]t is professional misconduct for a lawyer to. . . violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

10

On January 10, 2019, the HPS issued its decision in this matter, and found that the evidence established that Mr. Sayre had violated the West Virginia Rules of Professional Conduct as suggested in the statement of charges. The HPS decision provides that both the ODC and Mr. Sayre agreed upon the appropriate sanctions in their stipulations and requested that they be adopted by the HPS for recommendation to this Court. The HPS recommended that the following sanctions be imposed:

1.    That [Mr. Sayre]'s license to practice law be suspended from the practice of law for a period of ninety (90) days;

2.    That at the end of the suspension period, pursuant to Rule 3.31 of the Rules of Lawyer Disciplinary Procedure, if [Mr. Sayre] has entered into a supervision agreement and an agreement to pay the costs of the disciplinary proceedings, then [Mr. Sayre]'s reinstatement to the practice of law will be automatic;

3.    That [Mr. Sayre] undergo a period of supervised practice for a period of two (2) years with an attorney in good standing with the West Virginia State Bar who actively practices in the geographical area in which [Mr. Sayre] practices; and

4.    That [Mr. Sayre] pay the costs of the proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Thereafter, on February 21, 2019, the ODC filed its consent to the recommendation of the HPS. Mr. Sayre did not file a consent or an objection to the recommendation. By order dated April 11, 2019, this Court ruled that it did not concur with the recommended disposition and, instead, ordered the matter to be briefed and set for oral argument.

11

Before this Court, in the present proceeding, the LDB, ODC, and Mr. Sayre all consent to the foregoing recommended sanctions by the HPS. All of the parties contend that these proposed sanctions are fair and reasonable, and serve the objectives of the disciplinary process to protect the public and the legal profession while also reassuring the public as to the reliability and integrity of attorneys, and safeguarding the administration of justice.

## II.

## STANDARD OF REVIEW

When this Court considers a lawyer disciplinary matter,

> [a] *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board ("HPS")] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [HPS's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [HPS's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994). Even though we give respectful consideration to the recommendations of the HPS, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

12

In an effort to ensure the highest quality of legal services in this State, we have stated that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Lawyer Disc. Bd. v. Taylor*, 192 W. Va. 139, 144, 451 S.E.2d 440, 445 (1994). With these standards in mind, we proceed to consider the arguments before the Court.

## III.

## DISCUSSION

When reviewing lawyer disciplinary cases, we recognize that the ODC is required "to prove the allegations of the formal charge by clear and convincing evidence." Syl. pt. 1, in part, *Lawyer Disc. Bd. v. McGraw*, 194 W. Va. 788, 461 S.E.2d 850 (1995). However, in the absence of contrary arguments, "where the parties enter into stipulations of fact, the facts so stipulated will be considered to have been proven as if the party bearing the burden of proof has produced clear and convincing evidence to prove the facts so stipulated." Syl. pt. 4, in part, *Matter of Starcher*, 202 W. Va. 55, 501 S.E.2d (1998). In this case, Mr. Sayre willfully and voluntarily entered into factual stipulations and admitted that his conduct was in violation of the Rules of Professional Conduct. Accordingly, we focus our analysis of this matter on the proper sanctions to be imposed. This Court looks to Syllabus point 4 of *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998), for guidance in determining the appropriateness of sanctions:

13

Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

With these principles in mind, we will consider each of the *Jordan* factors. Then, we will address the imposition of appropriate sanctions.

### A. *Duty Violated*

The first *Jordan* factor questions "whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession." Syl. pt. 4, in part, *Jordan*, 204 W. Va. 495, 513 S.E.2d 722. This Court has continuously recognized that "attorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice[.]" *Comm. on Legal Ethics v. Keenan,* 192 W. Va. 90, 94, 450 S.E.2d 787, 791 (1994). Here, the parties stipulated to the fact that Mr. Sayre's actions violated duties to his clients, the public, and the legal profession. Specifically, Mr. Sayre recognized that he breached his duty to his clients by failing to promptly address his clients' rights to appeal, by failing to keep his clients informed, by failing to communicate with his clients, and by failing to provide competent representation. We find no reason to disturb

14

the parties' stipulations regarding the underlying facts, and, as such, we agree that Mr. Sayre's actions violated duties he owed to the public, the legal system, and the legal profession.

### B. Intentional, Knowing, or Negligent Actions

Relating to the second *Jordan* factor, we must examine Mr. Sayre's mental state at the time of his rule violations. In particular, the second *Jordan* factor asks us to determine "whether the lawyer acted intentionally, knowingly, or negligently." Syl. pt. 4, in part, *Jordan*, 204 W. Va. 495, 513 S.E.2d 722. The American Bar Association defines "intent" as the "conscious objective or purpose to accomplish a particular result." *Annotated ABA Standards for Imposing Lawyer Sanctions*, Definition (2015). "Knowledge" is defined as the "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *Id.* The parties stipulated, and Mr. Sayre acknowledged, that his actions were intentional and knowing. Once again, we find no reason to disturb the parties' stipulation, and we agree that Mr. Sayre's actions were intentional and knowing.

### C. Actual or Potential Injury

Under the third *Jordan* factor, we are required to consider "the amount of the actual or potential injury caused by the lawyer's misconduct." Syl. pt. 4, in part, *Jordan*, 204 W. Va. 495, 513 S.E.2d 722. Here, the parties agreed by stipulation that there was injury caused as a consequence of Mr. Sayre's actions. In particular, the LDB noted that

15

Mr. Sayre's misconduct, "as exhibited in the record is clearly detrimental to the legal system and the legal profession, his conduct undermines the public confidence in the administration of justice, and he has brought the legal system and profession into disrepute." Due to the agreed upon stipulation, and the evidence presented in the record, we agree that there has been clear injury in this matter.

### D. Aggravating and Mitigating Factors

Finally, under the fourth *Jordan* factor, we are required to consider "the existence of any aggravating or mitigating factors." Syl. pt. 4, in part, *Jordan*, 204 W. Va. 495, 513 S.E.2d 722. We will address both sets of factors in turn.

1. **Aggravating Factors.** In Syllabus point 4 of *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003), this Court held that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Here, the HPS identified five aggravating factors: (1) prior discipline[16]; (2) pattern of misconduct; (3) multiple offenses;

---

[16] The ODC public file for Mr. Sayre contained three prior complaints: October 6, 2015 complaint of Regina Johnson (ODC did not docket and determined that the complaint did not constitute a violation of the Rules of Professional Conduct, but directed Mr. Sayre to contact his client and provide written verification of this communication within ten days); October 2, 2015 complaint of Deatra Gunn (Mr. Sayre strongly warned to be mindful of his duties pursuant to Rules 1.3 and 1.4 of the Rules of Professional Conduct in future matters); and December 10, 2016 complaint of Roger Walker (Mr. Sayre admonished for violating Rules 1.3, 1.4, and 5.3 of the Rules of Professional Conduct).

(4) the selfish motive to have a personally gratifying sexual relationship; and (5) the vulnerability of the criminal client that he pursued for the sexual relationship.

**2. Mitigating Factors.** In addition to adopting aggravating factors in *Scott*, this Court also adopted mitigating factors to examine when determining the appropriateness of sanctions.

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Syl. pt. 3, *id.* Here, the HPS identified two mitigating factors: (1) cooperation during the disciplinary proceeding and (2) remorse.

Having considered all the factors set out in *Jordan*, the final step is to decide the appropriate sanction in light of those factors.

17

## E. Sanctions

This Court has frequently recognized that "[t]he principle purpose of attorney disciplinary proceedings is to safeguard the public's interest in the administration of justice." Syl. pt. 3, *Daily Gazette Co. v. Comm. on Legal Ethics*, 174 W. Va. 359, 326 S.E.2d 705 (1984). Additionally, sanctions must be designed to "serve as a deterrent to other attorneys." *McCorkle*, 192 W. Va. at 291, 452 S.E.2d at 382. Under Rule 3.15 of the Rules of Lawyer Disciplinary Procedure, the following are recognized as permissible types of sanctions:

> (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed, the Hearing Panel Subcommittee or the Court shall order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the disciplinary proceeding unless the panel or the Court finds the reimbursement will pose an undue hardship on the lawyer. Willful failure to reimburse the Board may be punished as contempt of the Court.

Further, this Court has explained that

> [i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. pt. 3, *Comm. on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

*Accord* Syl. pt. 4, *McCorkle*, 192 W. Va. 286, 452 S.E.2d 377; Syl. pt. 2, *Comm. on Legal*

*Ethics v. White*, 189 W. Va. 135, 428 S.E.2d 556 (1993); Syl. pt. 5, *Comm. on Legal Ethics v. Roark*, 181 W. Va. 260, 382 S.E.2d 313 (1989).

Based upon its consideration of the *Jordan* factors and precedent, the HPS recommended (1) that Mr. Sayre's license to practice law be suspended for a period of ninety (90) days; (2) that his license be automatically reinstated at the end of his suspension (pursuant to Rule 3.31, if Mr. Sayre has entered into a supervision agreement and an agreement to pay the costs of the disciplinary proceedings); (3) that he undergo a period of supervised practice for two years with an attorney in good standing with the West Virginia State Bar; and (4) that Mr. Sayre pay the costs of the proceedings pursuant to Rule 3.15.

When taking into account all of the factors to be considered in imposing sanctions, we agree with the ODC that the recommended types of sanctions submitted are appropriate for the behavior exhibited by Mr. Sayre. However, we find that the proportion of the sanctions should be harsher. As this Court has stated in the past, "[t]aking into account both the mitigating and the aggravating factors, we conclude that the recommendations submitted by the HPS are too lenient for behavior that has become a clear pattern of wrongdoing." *Lawyer Disc. Bd. v. Conner*, 234 W. Va. 648, 657, 769 S.E.2d 25, 34 (2015).

19

Our review of this case reveals that Mr. Sayre committed violations of all of the *Jordan* factors. He repeatedly failed to provide competent and diligent representation to his clients when he failed to timely perfect his clients' appeals, and he violated the Rules of Professional Conduct when he intentionally and knowingly engaged in inappropriate and sexually suggestive communications with his client. According to Standard 4.42 of the *Annotated ABA Standards for Imposing Lawyer Sanctions*, "[s]uspension is generally appropriate when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or a lawyer engages in a pattern of injury or potential injury to a client." As such, we agree that suspension is an appropriate punishment for Mr. Sayre's misconduct regarding his deficient representation of clients, and his inappropriate communication with a client.

We find Mr. Sayre's conduct to be similar to the misconduct displayed by the attorneys in both *Lawyer Disciplinary Board v. Conner*, 234 W. Va. 648, 769 S.E.2d 25 (2015) and *Lawyer Disciplinary Board v. Hollandsworth*, No. 14-0022 (W. Va. Sept. 18, 2014). In *Conner*, the attorney, Ms. Conner, received a ninety-day suspension when she failed to appeal her client's sentence in accordance with his wishes, failed to act diligently in her representation, neglected to keep her client informed as to the status of his case, and ignored her client's attempts at communication. *Conner*, 234 W. Va. at 657, 769 S.E.2d at 34. Further, like Mr. Sayre, Ms. Conner had multiple aggravating factors, including prior discipline. *Id.* In *Conner*, this Court discussed *Hollandsworth*, where the

20

Court imposed a ninety-day suspension, along with other sanctions, for Mr. Hollandsworth's failure to diligently represent his clients when he "neglected to pursue his client's petition for writ of habeas corpus, disregarded the duty to keep his client reasonably informed about the status of the matter, ignored his client's reasonable requests for information, and failed to provide his client with sufficient information about the matter." *Id.* (citing *Hollandsworth*, No. 14-0022 (W. Va. Sept. 18, 2014)).

However, in addition to Mr. Sayre's transgressions in filing and perfecting appeals, he also attempted to initiate a sexual relationship with a current client, in violation of Rules 8.4(a) and (d). Although a physical relationship never resulted, Mr. Sayre did acknowledge that he knowingly engaged in inappropriate and sexually suggestive communications with the intent of initiating a sexual relationship with his client. Among the cases in West Virginia dealing with sexual relationships involving lawyers and clients, and attempts to initiate such behavior, the sanctions have varied. *See, e.g.*, *Lawyer Disc. Bd. v. Stanton*, 233 W. Va. 639, 760 S.E.2d 453 (2014) (lawyer's license to practice law suspended for three years after having sexual relationships with incarcerated female clients); *Lawyer Disc. Bd. v. Artimez*, 208 W. Va. 288, 540 S.E.2d 156 (2000) (lawyer publically reprimanded after contracting with client to obtain a release from all possible claims for professional misconduct after having sexual relationship with client's wife).

With regard to this complaint, the parties stipulated that Mr. Sayre violated Rules 8.4(a), 8.4(d), and 1.8(j). When determining the appropriateness of sanctions, this Court closely examines the facts of each individual case.

> In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the committee on legal ethics initiates proceedings before this Court, it has a duty to advise this Court of all pertinent facts with reference to the charges and the recommended disciplinary action.

Syl. pt. 2, *Comm. on Legal Ethics of the W. Va. State Bar v. Mullins*, 159 W. Va. 647, 226 S.E.2d 427 (1976), *overruled on other grounds by Comm. on Legal Ethics v. Cometti*, 189 W. Va. 262, 430 S.E.2d 320 (1993). Rule 1.8(j) of the West Virginia Rules of Professional Conduct provides:

> A lawyer shall not have sexual relations with a client whom the lawyer personally represents during the legal representation unless a consensual sexual relationship existed between them at the commencement of the lawyer/client relationship. For purposes of this rule, "sexual relations" means sexual intercourse or any touching of the sexual or other intimate parts of a client or causing such client to touch the sexual or other intimate parts of the lawyer for the purpose of arousing or gratifying the sexual desire of either party or as a means of abuse.

Here, Mr. Sayre acknowledged that he knowingly engaged in inappropriate and sexually suggestive communications with the intent of initiating a sexual relationship. These messages were sent during the 120-day period following the client's sentencing date while

22

Mr. Sayre was still counsel of record for the limited purpose of filing a motion for reconsideration.

When considering these facts, we agree that Mr. Sayre's behavior violated Rule 8.4(a) and Rule 8.4(d), both relating to professional misconduct. However, we do not find that he violated Rule 1.8. The evidence shows, and the parties stipulated, that messages of a sexual nature were exchanged between Mr. Sayre and his client. Nevertheless, there is no evidence to show that "sexual intercourse," "any touching of the sexual or other intimate parts of a client," or "causing such client to touch the sexual or other intimate parts of the lawyer for purposes of arousing or gratifying the sexual desire of either party" occurred. Therefore, although we conclude that Mr. Sayre's behavior was inappropriate and violative of other rules related to misconduct, we find that it does not meet the definition of "sexual relations" as defined in Rule 1.8. However, we do find that his violations of Rules 8.4(a) and 8.4(d) and his inappropriate communications—in conjunction with the other violations discussed above—warrant suspension. In light of these additional violations, we conclude that suspension for one hundred twenty (120) days is appropriate.

23

## IV.

## CONCLUSION

We find that the following sanctions will accomplish the goals of our disciplinary system by punishing Mr. Sayre, restoring public confidence in the ethical standards of our profession, and serving as a deterrent to other members of the bar. *See Lawyer Disc. Bd. v. Taylor*, 192 W. Va. at 144, 451 S.E.2d at 445 ("Attorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice."). For the reasons set forth above, we impose the following sanctions:

1. Mr. Sayre's license to practice law be suspended from the practice of law for a period of one hundred twenty (120) days;

2. Mr. Sayre is required to complete six (6) hours of CLE in ethics in addition to such ethics hours he is otherwise required to complete to maintain his active license to practice law, with said additional six (6) hours to be completed before he is reinstated;

3. Mr. Sayre shall undergo a period of supervised practice for a period of two (2) years with an attorney in good standing with the West Virginia State Bar who actively practices in the geographical area in which Mr. Sayre practices; and

4. Mr. Sayre shall pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law License Suspended and Other Sanctions.

24